Compiler
Law Library

IN THE SUPERIOR COURT OF GUAM

PROFITA RITA SARMIENTO
ROBERTO-SANTOS,

                    Plaintiff,

            vs.

KENNETH IGNACIO SANTOS

                    Defendant.

DOMESTIC CASE NO. DM0608-10

FINDINGS OF FACT AND
CONCLUSIONS OF LAW
AND FINAL DECREE OF DIVORCE

This matter came before the HONORABLE VERNON P. PEREZ on February 15, 2012 and February 17, 2012 at bench trial. Attorney Harold Parker represented Plaintiff, who was present. Attorney Daniel S. Somerfleck represented Defendant, who was present. On February 17, 2012, the Court granted Interlocutory Judgment of Divorce to Defendant. After having heard the Parties' arguments, considering the Parties' pleadings and the record, the Court now issues the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

By a preponderance of the evidence, the Court makes the following findings of fact:

1. Any finding of fact is also a conclusion of law. Any conclusion of law is also a finding of fact.

2. This matter arises out of a dissolved marriage between Plaintiff Profita Rita Sarmiento Roberto-Santos (hereinafter "Plaintiff") and Defendant Kenneth Ignacio Santos (hereinafter "Defendant").

3. The Parties were married on November 25, 1988. The Parties separated on or about July 10, 2010. *See* Trial Transcript at 2:00p.m. on February 15, 2012.

4. There are no minor children of the Parties.

5. Both Parties allege irreconcilable differences as grounds for divorce.

6. Both Parties suffer from significant medical conditions. *See* Trial Transcript.

7. During the marriage Plaintiff worked for Guam Telephone Authority (GTA). *Id.*

8. During the marriage Defendant worked for the Federal Civil Service as well as being a member of the Guam Army National Guard. *Id.*

9. Plaintiff became too physically ill to continue working and fell under worker's compensation for some time. *Id.* At some point thereafter, GTA attempted to terminate the Plaintiff. Plaintiff fought the termination through the Civil Service Commission (CSC), but was not reinstated until after GTA became a private entity.

10. The Retirement Fund denied a retirement package to Plaintiff because GTA was no longer a Government agency. Eventually, Plaintiff was able to negotiate a settlement with the Retirement Fund.

11. Defendant retired from the National Guard in 2004. Defendant continues to work at Joint Regions Marianas at the Naval Station Police Department. *Id.* at 2:28p.m..

12. After separation, Bank of Hawaii attempted to foreclose on the family home. The family home was built by the Parties during the marriage on land that was previously gifted to the Plaintiff. After separation, Plaintiff made payments on the mortgage with family gifts.

13. Plaintiff was able to save the family home from foreclosure by using funds she received from a negotiated lump sum settlement with the Retirement Fund. *See* Trial Transcript at 3:17p.m..

14. The Parties have two motor vehicles including a 2005 Toyota RAV 4 and a 1998 Nissan Frontier.

15. During the marriage and after separation, Defendant has paid and kept current medical insurance for Plaintiff.

16. Other property of the marriage includes: household items, tools, equipment, sentimental dolls, a 2009 tax refund, Defendant's Thrift Savings Plan, Defendant's Guam Army National Guard Retirement Pension, Defendant's Department of Defense (DOD) Retirement Pension and Plaintiff's GTA Retirement Benefits.

## CONCLUSIONS OF LAW

17. Plaintiff and Defendant have been residents of Guam for more than ninety (90) days in satisfaction of 19 GCA § 8318(a). This Court has jurisdiction pursuant to 7 GCA §§ 3105 and 4101 and 19 GCA Ch. 8.

18. **Grounds for Divorce**

The Divorce is granted to Defendant on the basis of irreconcilable differences.

19. **Standard**

The standard and law governing divorce is discussed in the section below. Separate property means property acquired by either spouse before marriage or after entry of a decree of dissolution of marriage or earnings of a spouse while living separate. 19 GCA § 6101. Property is classified as separate or community based upon when it is acquired. *Id.; In re Marriage of Moore*, 28 Cal.3d 366, 370 (Sup.Ct.Cal.1980); *Fisher v. Fisher*, 383 P.2d 840, 842–43 (Id.Sup.Ct.1963); *Hollingsworth v. Hicks*, 258 P.2d 724, 729–30 (N.M.Sup.Ct.1953); *Lawson v. Ridgeway*, 233 P.2d 459, 464 (Ariz.Sup.Ct.1951); *Smith v. Smith*, 685 So.2d 649, 651–52 (La.Ct.App.1st Cir.1996); *In re Marriage of Harrington*, 935 P.2d 1357, 1365 (Wash.App.Div.1 1997); and *Scott v. Estate of Scott*, 973 S.W.2d 694, 695–96 (Tex.App.El Paso 1998). Pursuant to the Guam Supreme Court's ruling in *Rinehart v. Rinehart*, enhancement to separate property or debt will allow the community to seek reimbursement for community funds contributed during the marriage towards that asset. *Rinehart v. Rinehart*, 2000 Guam 14, ¶¶19–21 (Sup.Ct.Guam 2000). The Supreme Court of Guam has extended the *Rinehart* ruling to apply to both assets and debt in *Navarro v. Navarro*, again holding that "absent proof of the enhancement of a spouse's separate property, there should be no reimbursement to the community." *Navarro v. Navarro*, 2000 Guam 31, ¶16 (Sup.Ct.Guam 2000). The formula used by the Supreme Court of California grants the non-owning spouse a *pro tanto* community share in the *equity* or *capital appreciation* of the home as enhanced by community payments made to the principal owed on the mortgage, based on the real property's appraised value. *In re Marriage*

*of Moore*, 28 Cal.3d 366, 370–71, 373–74 (Sup.Ct.Cal.1980).

The formula used to compute the community *pro tanto* share in the *Moore* case is called the Lucas/Aufmuth formula and requires the court to first determine the separate property percentage interest by crediting the separate property with the down payment and full amount of the loan or the original value of the contributed separate property, minus the amount by which the community payments reduced the principal balance of the loan. Under Guam law, community property is different than community debt. *Compare* 19 GCA § 6101 *with* 19 GCA § 6102. Loans acquired during a marriage constitute community debt. 19 GCA § 6102 states: "(b) *Community debt* means a debt contracted or incurred by either or both spouses which is not separate debt." The Supreme Court of Guam has determined that it is not the burden of the trial court to find or show valuation, that burden lies with the parties. *Navarro v. Navarro*, 2000 Guam 31, ¶9 (Sup.Ct.Guam 2000). As aptly stated by the Supreme Court of Guam, "[one party]" bore the burden of establishing the value of community property at trial, where he failed to provide or contest valuation, the trial court was well within its discretion to accept the values provided by [the opposing party]." Id. at ¶11. As stated by the *Moore* court, this method of using capital appreciation and equity best credits the amount given from separate property for the original contribution, and best credits the role the original separate asset played in creating the equity in the home/real property. *In re Marriage of Moore*, 28 Cal.3d 366, 374 (Sup.Ct.Cal.1980).

Under 19 GCA §8411(b) and *Sinlao v. Sinlao*, 2005 Guam 24, ¶23 (Sup.Ct.Guam 2005), the Court is required to strive to divide the community property equally between the parties whenever possible. In this case, the Court was presented with evidence of the existence of community property and community debt.

## 20. Distribution

The Court must strive for equal distribution in this matter. 19 GCA § 8411. The Court has broad discretion in distributing community property such that the total distribution is equal. *Sinlao v. Sinlao*, 2005 Guam 24, ¶23 (Sup.Ct.Guam 2005).

### A. GTA Pension

Plaintiff worked at GTA during the marriage and made contributions to a Government of Guam retirement pension plan. See Trial Transcript at 2:07p.m.. Normally, that pension would be community property according to the formula used in *Moore*. Yet, there is an unusual history with Plaintiff's retirement from GTA. First, the pension came through a lump sum settlement with the Retirement Fund. Furthermore, Plaintiff took out from her retirement early, which dramatically reduced the value. Defendant has argued that an equal distribution would be to grant the entire GTA pension as Plaintiff's separate property and to do the same for Defendant's Civil Service retirement package. Defendant argues that the rationale for such a facially unequal distribution would be that Plaintiff used the GTA retirement package she earned for her sole benefit. Defendant is persuasive on this issue. The Court concludes that Plaintiff's GTA retirement package will be distributed solely to Plaintiff.

### B. National Guard Pension

Defendant concedes that his Department of Defense retirement pension is community property. The Court will distribute the pension according to Defendant's years of service during the marriage. Plaintiff maintains a one-half interest in Defendant's retirement pension according to the ratio (months of service during marriage/ total months of service).

### C. Civil Service Pension and Thrift Savings Plan

Defendant argues that his Civil Service retirement pension, coupled with a thrift savings plan, be deemed his separate property and that Plaintiff's GTA

retirement package also be deemed Plaintiff's separate property, as explained above. The Court already found this distribution to be equal. The Court finds, that the civil service retirement pension and thrift savings plan will be distributed to the Defendant. As support to this conclusion, the Court recognizes that Defendant used his thrift savings plan as collateral to a car loan. The Court does not find that the car loan is a community debt. The Court finds that the RAV 4 loan remains with Defendant as the thrift savings plan is solely Defendant's property.

D. **Family Home**

Defendant asks that the family home, located at 441 Sgt. E. Cruz St. in Santa Rita within the Territory of Guam, be sold to pay the community mortgage and other community debts. Plaintiff received the land upon which the house sits via gift. The underlying land is Plaintiff's separate property, which Defendant concedes. The house itself was built during the marriage from a mortgage taken out during the marriage.

Plaintiff has agreed to hold Defendant harmless on the remaining mortgage if the house is distributed solely to her. The Court finds that both the mortgage and the home are Plaintiff's separate property.[1] Title 19 GCA § 8411(c) grants the court the discretion to award a community property home to either spouse or to divide the homestead by sale or some other method. In essence, the Court will assign Defendant a reimbursement for community assets used to buy the home in order to allow Plaintiff to keep the family home. Defendant has suggested that the family home is worth roughly $345,000.00 and submitted an appraisal that the home is worth roughly $272,000.00. *See* Appraisal Prepared for Defendant. Plaintiff suggests the home is worth about the same as the mortgage of roughly $127,000.00 and submitted an appraisal suggesting the home is worth $166,000.00. *See*

---

[1] The marital funds used to build the home on Plaintiff's separate property improved the property significantly.

Appraisal prepared for Plaintiff. The Court is not confident in either Party's valuation of the family home as there is such a vast difference amongst the appraisals submitted. As a result, the Court will accept a valuation that the Court deems correct from the record. The Court values the family home at $219,000.00 based on the two appraisals and the current condition of the home as testified to at trial. The Court finds that Defendant being released from the mortgage will have equal distribution value to Plaintiff being granted sole owner of the land and home as long as there is a reimbursement to Defendant of his share of the community assets used to improve the Plaintiff's separate property land. The mortgage on the home is a liability in the amount of roughly $127,000.00. *See* Testimony of Plaintiff as Bench Trial. Thus, the value of the current home is roughly $92,000.00 more than the mortgage. That $92,000.00 value is an improvement on Plaintiff's separate property.

As the value of the home is worth $92,000.00 more than the mortgage, that $92,000.00 is reimbursable asset. Thus, the Court will assign both the liability of the mortgage and the asset that is the home and land to Plaintiff. But, to make the distribution equal, the Plaintiff will be obligated to return Defendant community property share of the reimbursement to the community. Therefore, Plaintiff will owe Defendant $46,000.00 to make the distribution equal.

E. **Bank of Hawaii Mortgage**

As explained above, the Mortgage is Plaintiff's sole debt. 19 GCA § 6102(b).

F. **The Family Vehicles**

During the marriage, Parties acquired a 2005 Toyota RAV 4 and a 1998 Nissan Frontier. Both vehicles are community property and the Court will assign the vehicles such that equal distributions take place. The Court concludes that each Party may retain the ownership of the vehicle that is currently in their possession.

## G. Sentimental Items

There was testimony of dolls and cultural items that have no monetary value but are high in sentimental value. Plaintiff will be allowed to retain her collection of dolls and any sentimental items she currently possesses. Testimony was given as to an ancient Chamorro rock that has high sentimental value. *Id* at 3:37p.m.. The cultural rock will remain with the Party currently in possession of it. There was also testimony of a coin collection with low monetary value. The Court will distribute the collection to the currently possessing Party.

## H. Household Items and Appliances

The Parties have presented evidence that household items were taken from the home and either sold or remain in the separate possession of one of the Parties. Plaintiff's sister testified to the missing items and Defendant admitted to taking and selling items from the home for medical reasons. *See* Trial Transcript. The Court did find adequate evidence presented that would warrant reimbursement for any household items no longer within the possession of either Party.[2] Some items are missing that are not accounted for and the valuation for these items is difficult to ascertain. Any item now in the sole possession of a Party shall be deemed their separate property. Yet, for the items sold off by Defendant that are unaccounted for, the Court will require a reimbursement to the community of $5,000.00. Thus, Defendant should pay to Plaintiff $2,500.00 for her share of the community assets misappropriated by Defendant.

---

[2] Strong and adequate evidence was presented that indicated misappropriation by the Defendant for valuable household items. The Court also heard evidence that any money attained from the sale of those items went to Defendant's medical costs. The Court finds that Defendant should reimburse the community for any items taken and used for medical reasons before or after the date of separation. The Court finds that those items were very difficult to value, but concludes that $5,000.00 is an appropriate amount.

## I. Yard Work Equipment and Tools

The Court finds that the same analysis used in the above section applies to all yard equipment and tools.

## J. 2009 Tax Refund

There is a presumption that income received during the marriage is community property. Where a tax refund is returned to the Parties after taxes paid jointly during the marriage, the refund must also be community property. No exception applies here and the Court concludes that the 2009 Tax Refund is community property and should be distributed evenly to both Parties.

## K. FGLI Life Insurance

Any life insurance policy being paid for by a Party to the benefit of another Party may discontinue.

## L. Master Card Debt

There is a presumption that debt incurred during the marriage is community debt. No exception applies here and the Court concludes that the credit card debt incurred during the marriage is a community debt. Both Parties are responsible for this debt. The Court finds that any debt incurred during the marriage not directly mentioned in these findings is community debt.

## M. Legal Fees Debt

There is also a debt owed to the Brooks Law Office. The debt was incurred during the marriage and by operation of statute; it should be classified as community debt. Both Parties are responsible for the Brooks Law Firm debt.

## N. RAV 4 Loan

There is a loan attached to the Toyota RAV 4. As collateral to the loan, Defendant's thrift savings plan was made liable to the loan. The Toyota RAV 4 is now separate property belonging to the Plaintiff because it is in her possession, but the loan will remain with Defendant as he is keeping the thrift savings plan as his separate property.

21. **Separate Maintenance**

A spouse may be entitled to maintenance under 19 GCA § 8402. Plaintiff asks the Court to order that Defendant continue paying for Plaintiff's health insurance. The Court finds this to be a proper request as Defendant continues to be able to make a living while Plaintiff suffers from physical ailments preventing her from working. In addition, Defendant provided financial support for the Plaintiff during the lengthy marriage that Plaintiff became accustomed to. Specifically, Defendant paid for health insurance for Plaintiff during the marriage that Plaintiff continues to rely on. *See* Trial Transcript at 3:08p.m.. The Court will order that Defendant continue paying for Plaintiff's health insurance, which is a substantial amount, in lieu of additional spousal support until Plaintiff is remarried or for ten (10) years, whichever comes first. *See* 19 GCA § 8405. Even if Defendant is unable to continue health insurance for Plaintiff through his work benefits, he will be obligated by this decree to support Plaintiff by paying for her health insurance as long as that insurance is reasonable.

22. The Court also finds that Plaintiff must reimburse Defendant $46,000.00 for his share of the community property used to build the family home. That amount will be offset by the reimbursement owed to Plaintiff of $2,5000.00 for the misappropriated goods. Thus, Plaintiff must pay to Defendant $43,500.00. The Court will allow Plaintiff some time to find assistance to pay the reimbursement, but the Court understands the financial situation the Plaintiff is in. Therefore, if Plaintiff is unable to begin making payments to the reimbursement, the Plaintiff will also be given the option to sell the home and provide Defendant with his share of the proceeds. In sum, the Court will grant Plaintiff the option of selling the home, discontinuing the separate maintenance of ten years, releasing a portion of her right to Defendant's National Guard Retirement or finding another way to make regular payments to Defendant to equalize distribution.[3]

---

[3] These options are only suggestions. If the Parties can develop some other way so that Defendant is paid his proper reimbursement, the Court is inclined to allow Plaintiff to keep her land.

23. The Court finds that the overall distribution of assets and liabilities in this matter is equal.

## ORDER

24. This is a final judgment of divorce, the Parties are no longer husband and wife and either can remarry in Guam or anywhere upon issuance of this Decree.

So ORDERED this 26 day of March, 2013.

_____
HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the Office of the Clerk of the Superior Court of Guam. Dated at Hagåtña, Guam.

MAR 2 6 2013

Leonard F. Ventura
Deputy Clerk, Superior Court og Guam

/   /

/   /

/   /